IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SOMERSET CONSULTING, LLC, et al.:        CIVIL ACTION
                                  :
        v.                        :
                                  :
UNITED CAPITAL LENDERS, LLC,      :
et al.                            :        NO. 10-3622


MEMORANDUM

Dalzell, J.                              November 15, 2011

        Plaintiffs Somerset Consulting, LLC ("Somerset") and

Charlotte Schmeling ("Schmeling") bring this action against

defendants United Capital Lenders, LLC ("United"), Christopher

Herghelegiu, and George Herghelegiu, alleging ten claims arising

out of a consulting and referral agreement entered into between

Somerset and United in April, 2008.  Plaintiffs allege in

duplicate -- on behalf of both Somerset and Schmeling, against

all defendants -- claims for breach of contract, specific

performance, accounting, and unjust enrichment, as well as for

attorney's fees.

        Defendants have filed a motion to dismiss plaintiffs'

complaint and refer this matter to arbitration.  Plaintiffs

oppose that motion.  For the reasons set forth below, we will

grant defendants' motion to dismiss and direct the parties to

arbitrate plaintiffs' claims before Judicial Arbitration and

Mediation Services ("JAMS") in accordance with the parties' arbitration agreement.

## I.   **Factual Background**

### A.   **The Standard for Motions to Compel Arbitration**

At the threshold we confront a question regarding the proper standard to apply to the factual allegations in this matter.  We also must deal with a dispute regarding the ripeness of defendants' motion for disposition.

Defendants assert their motion pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6), but explain that they "file[] this Motion to Dismiss pursuant to Rule 12(b)(6) and not Rule 12(b)(3) without waiving the right to do so pursuant to the dicta in various Third Circuit District Courts [that] have indicated that the appropriate vehicle to challenge a pleading based on an arbitration or forum selection clause is a Rule 12(b)(6) motion." Defs.' Mem. of L. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 5 n.3.  Plaintiffs respond that "Motions to Compel Arbitration are reviewed under the standard for summary judgment as are found in Fed. Rule of Civil Procedure 56(c)[.]  The court must examine all evidence presented by the party opposing arbitration and construe all reasonable inferences in that parties' [sic] favor."

2

Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp.") at 5.
Plaintiffs further contend that "[b]efore the courts may resolve
that issue [as to whether to compel arbitration in this case],
the court must decide the validity of the arbitration provision
and in this case that requires extensive discovery to provide
This [sic] Court with the necessary information." Id. at 6.

We thus must decide whether to apply a motion to
dismiss or summary judgment standard to defendants' motion to
compel arbitration, as well as determine, in a related inquiry,
whether plaintiffs are entitled to conduct discovery in this
matter before we rule on defendants' motion. With respect to the
applicable standard, each of the parties' positions finds support
in the case law.

Our Court of Appeals explained in 2004 that "[o]ur
prior decisions support the traditional practice of treating a
motion to compel arbitration as a motion to dismiss for failure
to state a claim upon which relief can be granted." Palcko v.
Airborne Express, Inc., 372 F.3d 588, 597 (3d Cir. 2004) (citing
Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 n.1 (3d Cir.
1991)); see also Digital Signal, Inc. v. VoiceStream Wireless
Corp., 156 Fed. Appx. 485, 487-88 (3d Cir. 2005) ("It is
difficult for us to understand why the district court did not end

3

its inquiry there and grant T-Mobile's Motion to Dismiss and Compel Arbitration."). But almost a quarter-century earlier, the Court of Appeals concluded that "when considering a motion to compel arbitration . . . [a district court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise," employing "the standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)." Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 & n.9 (3d Cir. 1980). The Court of Appeals recently reiterated this earlier holding, stating that "[a] district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment." Vilches v. The Travelers Companies, Inc., 413 Fed. Appx. 487, 490 (3d Cir. 2011) (internal quotation marks omitted).

As for Nationwide, 953 F.2d at 45 n.1 (citations omitted) -- the case cited in Palcko -- the Court of Appeals therein observed that "[d]ismissal of a declaratory judgment action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted, or Rule 56 covering summary judgments if matters beyond the

4

pleadings were considered."  See also Spinetti v. Service Corp.
Int'l, 324 F.3d 212, 215 (3d Cir. 2003) (noting without criticism
that the district court "converted the Appellee's Motion to
Dismiss and Compel Arbitration into a Motion for Summary
Judgment").

Our task, then, is to reconcile this jurisprudence,
which at first glance appears complicated by the significant
differences between Rule 12(b)(6) and Rule 56 standards.  In
considering a Rule 12(b)(6) motion to dismiss, the test "'is
whether, under any reasonable reading of the pleadings, [the]
plaintiff may be entitled to relief,'" Kundratic v. Thomas, 407
Fed. Appx. 625, 627 (3d Cir. 2011) (brackets in original)
(quoting Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir.
1993)), and where "the defendant bears the burden of showing that
no claim has been presented."  Hedges v. U.S., 404 F.3d 744, 750
(3d Cir. 2005).  To survive this test, "a complaint's 'factual
allegations must be enough to raise a right to relief above the
speculative level.'"  Ideen v. Straub, 385 Fed. Appx. 123, 124
(3d Cir. 2010) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 555 (2007)).  On such a motion, we "'accept all factual
allegations in the complaint as true and give the pleader the
benefit of all reasonable inferences that can be fairly drawn

therefrom,'" <u>Ordonez v. Yost</u>, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993)), and "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." <u>Lum v. Bank of America</u>, 361 F.3d 217, 221 n.3 (3d Cir. 2004)) (internal quotation marks omitted).

In contrast, under Rule 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," where "[a] party asserting that there is a genuine dispute as to a material fact must support that assertion with specific citations to the record." <u>Bello v. Romeo</u>, 424 Fed. Appx. 130, 133 (3d Cir. 2011).  In evaluating a Rule 56 motion, we "'must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence.'" <u>Eisenberry v. Shaw Bros.</u>, 421 Fed. Appx. 239, 241 (3d Cir. 2011) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)).  The Supreme Court has explained that entry of summary judgment is appropriate only if the parties are given "adequate time for discovery." <u>Celotex Corp.</u>, 477 U.S. at 322.

6

Both the burden on the non-moving party and the documents available to that party thus differ significantly under the motion to dismiss and summary judgment standards.  In applying the motion to dismiss standard, the defendant need only shoulder a single burden -- to show that the complaint fails to state a claim -- but under a summary judgment standard a burden-shifting framework applies: "[t]he moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case," upon which "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." Connection Training Servs. v. City of Phila., 358 Fed. Appx. 315, 318 (3d Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986)).  In defending a motion to dismiss for failure to state a claim, a plaintiff can rely only on the complaint and selected other documents, while in responding to a motion for summary judgment a nonmovant may cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).  Here, the plaintiffs appear to welcome the burden

7

that a summary judgment standard would impose upon them because they seek the discovery -- and the corresponding freedom to cite to the record -- that they would be entitled to under that standard.

It is thus important that we decide which standard to apply to defendants' motion to compel arbitration.  <u>Nationwide</u>'s reconciliation of the standards -- that such motions should be considered "under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted, or Rule 56 covering summary judgments if matters beyond the pleadings were considered," 953 F.2d at 45 n.1 -- while certainly accurate, assists us little in our particular inquiry.  We must determine whether plaintiffs are entitled to conduct discovery and then to cite to "matters beyond the pleadings," <u>id.</u>, in responding to defendants' motion to compel arbitration.

To identify which standard applies, we will consider four sources of authority: (1) the procedure that the Act establishes for determining whether a motion to compel arbitration should be granted; (2) the role that applicable precedent envisions for discovery; (3) case law on the use of arbitrability by defendants to challenge the viability of a

complaint; and (4) the purposes that courts have articulated as motivating enactment of the FAA.

The FAA provides, at 9 U.S.C. § 2, that

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 4 explains the procedure that a court should follow in ruling upon a motion to compel arbitration:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure,

> neglect, or refusal to perform the same be in
> issue, the court shall proceed summarily to
> the trial thereof.

This Section is thus equivocal as to the standard a court should

apply in resolving a motion to compel arbitration, requiring only

that the court "hear the parties" and compel arbitration if "the

making of the agreement for arbitration . . . is not in issue."

Decisions from our Court of Appeals and the Supreme

Court suggest that parties may have some limited right to

discovery before a court rules on a motion to compel arbitration.

In Blair v. Scott Specialty Gases, 283 F.3d 595, 608-09 (3d Cir.

2002), our Court of Appeals discussed the Supreme Court's

decision in Green Tree Fin. Corp. -- Alabama v. Randolph, 531

U.S. 79 (2000), explaining that

> Green Tree established the right of a
> claimant to invoke discovery procedures in
> the pre-arbitration proceeding in order to
> assist the claimant in meeting her burden of
> showing the likelihood of bearing prohibitive
> costs.  Although discovery is ordinarily not
> undertaken at such an early stage of a
> proceeding that is governed by an arbitration
> agreement, there is language in the Supreme
> Court's opinion faulting the claimant for not
> presenting evidence "during discovery."
> Green Tree, 531 U.S. at 92, 121 S. Ct. 513.
> Additionally, the EEOC cites an interchange
> during oral arguments before the Supreme
> Court that indicates that the Supreme Court
> assumed that discovery was available.  Br. of
> EEOC at 12.  Without some discovery, albeit

limited to the narrow issue of the estimated
costs of arbitration and the claimant's
ability to pay, it is not clear how a
claimant could present information on the
costs of arbitration as required by <u>Green
Tree</u> and how the defendant could meet its
burden to rebut the claimant's allegation
that she cannot afford to share the cost.

<u>Blair</u> and <u>Green Tree</u> thus suggest that, at least under certain
circumstances, a claimant is entitled to narrow discovery on the
arbitrability of her claims -- though these decisions also
indicate that discovery is ordinarily not conducted in the early
stages of a proceeding involving an arbitration agreement.

On the other hand, it is well-settled in this Circuit
that "[w]hile the language of Fed. R. Civ. P. 8(c) indicates that
a statute of limitations defense cannot be used in the context of
a Rule 12(b)(6) motion to dismiss, an exception is made where the
complaint facially shows noncompliance with the limitations
period and the affirmative defense clearly appears on the face of
the pleading." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38
F.3d 1380, 1384 n.1 (3d Cir. 1994).  Our Court of Appeals has
explained, moreover, that "[t]his holding applies not only to a
statute of limitations defense, but also to any affirmative
defense raised pursuant to Rule 8(c)," <u>Rycoline Prods., Inc. v. C
& W Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997), where Fed. R.

Civ. P. 8(c)(1) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . arbitration and award."  In ruling on a motion to dismiss premised on an affirmative defense appearing on the face of a complaint, "[t]he question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis" for rejecting the affirmative defense.  Leone v. Aetna Cas. & Sur. Co., 599 F.2d 566, 567 (3d Cir. 1979) (discussing a motion to dismiss based on noncompliance with the applicable limitations period).

This jurisprudence suggests that, where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or, presumably, documents relied upon in the complaint[1]), a party should be able to move to compel arbitration even if discovery has not yet occurred and thus the summary judgment standard would be inapplicable.  This conclusion is bolstered by a wealth of case law confirming that one of the

_____

[1] As already noted, in ruling on a Rule 12(b)(6) motion, a court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum, 361 F.3d at 222.

primary purposes[2] of the FAA was the "encouragement of efficient and speedy dispute resolution." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 221 (1985); <u>see also</u> <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 404 (1967) (remarking on "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts"); <u>Allied-Bruce Terminix Co., Inc. v. Dobson</u>, 513 U.S. 265, 278 (1995) (noting that "Congress wrote the Act to help the parties avoid" "costs and delay through litigation"); <u>Preston v. Ferrer</u>, 552 U.S. 346, 357-58 (2008) ("A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results.") (internal quotation marks and citations omitted).  The Supreme Court has further explained that "[t]he Arbitration Act calls for a summary and speedy disposition of

---

[2] <u>Dean Witter</u> identified two goals of the FAA -- speedy dispute resolution and "enforcement of private agreements," 470 U.S. at 221 -- while "reject[ing] the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims," <u>id.</u> at 220, and hence concluded that conflict between the Act's two goals should be resolved in favor of enforcing private arbitration agreements. This holding did not, however, undermine the importance of efficient dispute resolution as a secondary goal of the Act.  <u>See AT&T Mobility LLC v. Concepcion</u>, 131 S. Ct. 1740, 1749 (2011).

motions or petitions to enforce arbitration clauses."  Moses H. Cone Mem'l Hosp., 460 U.S. at 29.

It would serve neither the goal of expeditious dispute resolution nor that of speedily resolving motions to compel arbitration to reject such a motion when it is premised upon facts apparent from the face of a complaint (and documents relied upon in the complaint), but instead to require parties to conduct discovery on an arbitration clause's enforceability before briefing the Court.  When it is apparent from the face of a complaint that a claim is subject to an arbitration clause, and the party opposing arbitration cannot allege facts that "raise a reasonable expectation that discovery will reveal" the clause to be unenforceable, Twombly, 550 U.S. at 556, the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery.

These considerations lead us to conclude that the decisions of our Court of Appeals holding on the one hand that motions to compel arbitration are to be decided under a Rule 12(b)(6) standard, and, alternatively, that such motions are to be decided under a summary judgment standard, are readily reconcilable.  When it appears from the face of a complaint, and documents relied upon in the complaint, that certain of its

14

claims are subject to an enforceable arbitration clause, a motion
to compel arbitration should be considered under a Rule 12(b)(6)
standard without discovery's delay.  If the party opposing
arbitration does not, in its complaint, allege "enough fact[s] to
raise a reasonable expectation that discovery will reveal" the
clause to be unenforceable, Twombly, 550 U.S. at 556, the motion
to compel arbitration should be granted.  But if a plaintiff can
allege such facts (or the motion to compel arbitration does not
have as its predicate a complaint with the requisite clarity on
the point), the parties should be entitled to discovery on the
question of arbitrability before a court entertains further
briefing on this question.  Any motion to compel arbitration
submitted following such discovery should be evaluated under a
Rule 56 standard.  If the party opposing arbitration can
demonstrate, by means of citations to the record, a genuine
dispute as to the enforceability of the arbitration clause, a
court may then proceed summarily to a trial regarding "the making
of the arbitration agreement or the failure, neglect, or refusal
to perform the same," as Section 4 of the FAA envisions.

Here, defendants assert that the consulting and
referral agreement entered into between Somerset and United
contains an enforceable arbitration clause that applies to all of

15

plaintiffs' claims.  Since this agreement forms the basis of plaintiffs' claims, and plaintiffs attached it to their complaint, we conclude that defendants' motion to compel arbitration is properly evaluated under a Rule 12(b)(6) motion, without the need for further discovery.

**B.  <u>The Facts of Plaintiffs' Complaint</u>**

We will thus recite the "factual allegations in the complaint," "giv[ing] the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom," <u>Ordonez</u>, 289 Fed. Appx. at 554 (internal quotation marks omitted), and "consider[ing] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  <u>Lum</u>, 361 F.3d at 221 n.3.  We begin with the procedural history.

On March 19, 2010, plaintiffs filed this action in the Court of Common Pleas of Delaware County, Pennsylvania.  Ex. 2 to Defs.' Mot. to Compel Arbitration ("Defs.' Mot.").  Defendants filed preliminary objections to plaintiffs' complaint on June 21, 2010, Ex. 3 to Defs.' Mot., prompting plaintiffs to file an amended complaint on July 12, 2010.  Ex. 4 to Defs.' Mot. Defendants then filed a notice of removal in this Court on July

23, 2010, Defs.' Notice of Removal, which on September 30, 2010 they followed with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6).  Because plaintiffs filed no response, timely or otherwise, to this motion, we granted it as unopposed on October 29, 2010, and dismissed this case.

Almost three months later, on January 26, 2011, plaintiffs filed a motion to reinstate this case, claiming that their attorney never received defendants' motion to dismiss because an incorrect address was listed for him on the docket. Though defendants opposed plaintiffs' motion, we concluded that plaintiffs' failure to respond to defendants' motion to dismiss constituted "excusable neglect" under Fed. R. Civ. P. 60(b)(1) and thus granted plaintiffs' motion to reinstate the case. Order, Mar. 3, 2011.  Defendants filed their motion to compel arbitration a month later, to which plaintiffs filed a timely response.

According to plaintiffs' amended complaint, Somerset is a limited liability company organized under the laws of New Jersey and with its principal place of business in New Jersey, while Schmeling is an adult citizen of New Jersey.  Pls.' Am. Compl. ¶¶ 1-2.  United is a limited liability company organized under Pennsylvania law with its principal place of business in

17

Pennsylvania.  Id. ¶ 3.  Christopher and George Herghelegiu are both adults "who may be served" in Pennsylvania.  Id. ¶ 4.

On or about April 18, 2008, Somerset and United entered into a written agreement ("the agreement") whereby Somerset was to provide consulting and referring services to United.  Id. ¶¶ 8, 10.  On about the same date, Schmeling entered into a separate written agreement with United ("the addendum") which was attached to and incorporated into the written agreement between Somerset and United.  According to plaintiffs, the addendum provided that the agreement could not be terminated "for any grounds other than the sale of [United] or the expiration of fifteen years."  Id. ¶¶ 9, 11.

Plaintiffs aver that they fulfilled all the terms and conditions that they were to satisfy under the agreement and addendum (together, "the agreements"), but that United has not satisfied the terms and conditions that the agreements imposed upon it, since it has not rendered to plaintiffs upon demand the compensation the agreements provided.  Id. ¶¶ 12-13.  Plaintiffs assert that Christopher and George Herghelegiu are individually

18

liable, along with United, due to various failures to observe corporate formalities.[3]  Id. ¶ 14.

Plaintiffs concede that "Paragraph 8 of the aforesaid Agreement (Exhibit "A") calls for this matter to be litigated in Arbitration."  Id. ¶ 16.  However, plaintiffs contend "that said Paragraph 8 (Arbitration) is void, and thus not enforceable."  Id.  Plaintiffs proffer four claims in support of this contention:  (1) the agreement, including Paragraph 8,[4] was drafted solely by defendants' attorney; (2) at the drafting and signing of the agreement, plaintiffs were unrepresented by counsel; (3) at the preparation and execution of the agreement, plaintiffs and defendants were not of equal bargaining power; and

---

[3] Thus, plaintiffs allege "(a) That all Defendants did not observe and comply with all formalities as required by the Commonwealth of Pennsylvania relative to the organization, recording, and operation of Defendant, United; (b) That at all times relevant hereto, Defendant, United, was severely under capitalized; (c) That at all times relevant hereto, all Defendants co-mingled the funds of the Defendant, United, amongst each other and amongst various other entities owned and/or operated by the individual Defendants; and (d) That at all times relevant hereto, all Defendants co-mingled the assets of the Defendant, United, amongst each other and amongst various other entities owned and/or operated by the individual Defendants." Pls.' Am. Compl. ¶ 14.

[4] Though plaintiffs primarily refer to the subdivisions of the agreement as "Paragraphs," the agreement itself identifies them as "Sections."  We will use these terms interchangeably.

(4) Paragraph 8 specifically allows for court proceedings,

outside of the arbitration process, relating to the "items

described in Section 6 of the aforesaid Agreement," but each of

these items inures exclusively to defendants' benefit.  <u>Id.</u> ¶

16(a)-(d).  Plaintiffs in their amended complaint also assert an

array of legal arguments as to the inability of arbitration to

provide them with the relief they seek.  <u>Id.</u> ¶ 16(e)-(g).

Turning to the agreement itself -- which we may

consider in applying the Rule 12(b)(6) standard since it was both

attached to plaintiffs' amended complaint and forms the basis of

plaintiffs' claims -- Section 8 provides:

> <u>Arbitration.</u>  Any dispute, claim or
> controversy arising out of or relating to
> this Agreement or the breach, termination,
> enforcement, interpretation or validity
> thereof (except those disputes arising out of
> a breach or threat of breach by Somerset of
> the Covenants described in Section 6 hereof),
> including the determination of the scope or
> applicability of this Agreement to arbitrate,
> shall be determined by arbitration in
> Philadelphia, Pennsylvania before a single
> arbitrator.  At the option of the first Party
> to commence an arbitration, the arbitration
> shall be administered by JAMS either pursuant
> to its Comprehensive Arbitration Rules and
> Procedures or Streamlined Arbitration Rules
> and Procedures.  Judgment on the award may be
> entered in any court having jurisdiction.
> This clause shall not preclude the Parties
> from seeking provisional remedies in aid of
> arbitration from a court of appropriate

> jurisdiction or as otherwise provided in this
> Agreement.  The arbitrator may, in the award,
> allocate all or part of the costs of the
> arbitration, including the fees of the
> arbitrator and the reasonable attorneys' fees
> of the prevailing Party.

Ex. 1 to Defs.' Mot. ¶ 8 (emphasis in original).

Section 6, parenthetically referenced in Paragraph 8, contains four restrictive covenants, each applicable only to Somerset: covenants of non-competition, non-solicitation/non-piracy, non-disclosure, and nondisparagement.  Id. ¶ 6(a)-(d). Section 6(e)(i), moreover, provides that "in the event of any such breach or threatened breach [of these covenants], Company[5] shall be entitled, in addition to all other rights and remedies which Company may have at law or in equity, to have an injunction issued by any competent court enjoining and restraining Somerset and/or all other persons involved therein from committing a breach or a continuing breach."  Id. ¶ 6(e).

Finally, Section 1(a) of the agreement enumerates the services Somerset was to provide to United:

> Somerset shall provide to the Company the
> following services: (i) to identify for the
> Company and assist the Company in the
> solicitation of Customers for the Company;

_____

[5] The preface to the agreement identifies the "Company" as United Capital Lenders LLC.  Ex. 1 to Defs.' Mot. at 1.

> and (ii) provide such general marketing,
> business, and other consulting services as
> the Chief Executive Officer of the Company
> (the "CEO") may from time to time assign to
> Somerset.

Section 3(a) describes the fee-based compensation Somerset would receive for the services it provided to United, providing that United would pay to Somerset fifty percent of the processing fee received on each closed mortgage loan for customers which Somerset had procured, as well as sixty dollars of the fee received for processing customers that Somerset did not procure -- though Somerset's commission on procured customers would drop to twelve and a half percent in any month in which United closed fewer than forty loans consequent to Somerset's efforts.  Section 3(b), moreover, describes a "success fee" that Somerset would be due if, as anticipated, "the value of the Company . . . increase[d] significantly" and "the Company [was] sold to a third party purchaser."  Under this provision, Somerset would receive fifty percent of the net proceeds of any sale occurring prior to the third anniversary of the agreement; this success fee decreased in steps to fifteen percent for any sale occurring between the tenth and fifteenth anniversaries of the agreement, and to zero percent of the net proceeds for any sale taking place thereafter.

## II.  <u>Analysis</u>

We turn now to the merits of defendants' motion to compel arbitration, which we treat as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  We have already noted that in ruling on such a motion the test "is whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief."  <u>Kundratic</u>, 407 Fed. Appx. at 627 (brackets and internal quotation marks omitted).  To pass this test, a pleading may not simply offer "labels and conclusions," <u>Twombly</u>, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Twombly</u>, 550 U.S. at 555, which is to say that there must be "more than a sheer possibility that a defendant has acted unlawfully."  <u>Iqbal</u>, 129 S. Ct. at 1949.  Essentially, a plaintiff must provide "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  <u>Twombly</u>, 550 U.S. at 556.

Defendants argue that "[t]he amended complaint must be dismissed based on Rule 12(b)(6) because it does not [state] a

claim for which relief can be granted as the exclusive avenue to
pursue these claims is arbitration." Defs.' Mem. at 7. As we
have already explained, plaintiffs' amended complaint concedes
that their claims come within the ambit of the agreement's
arbitration clause, stating that "Paragraph 8 of the aforesaid
Agreement (Exhibit "A") calls for this matter to be litigated in
Arbitration." Pls.' Am. Compl. ¶ 16. Plaintiffs advance two
reasons, however, that the arbitration clause of the agreement is
unenforceable: (1) "[t]he contract which forms the basis for the
Plaintiff's [sic] claims is a 'contract of adhesion' and was
authored by the Defendants and presented to the Plaintiffs who
had no attorney," Pls.' Resp. to Defs.' Mot. ("Pls.' Resp.") at
4; and (2) "Plaintiffs also are seeking an injunction," but
"[a]rbitration is unable to provide an injunctive remedy and that
action is reserved to This [sic] Court." Id. at 6. We will
consider each of these arguments in turn, but first we will pause
to consider whether plaintiffs' challenges to the arbitration
agreement are properly before us.

### A.   Our Authority to Evaluate the Arbitration Clause

Interpreting the FAA, the Supreme Court explained more
than forty years ago that "in passing upon a § 3 application for

a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." Prima Paint Corp., 388 U.S. at 404. Thus, "if the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the 'making' of the agreement to arbitrate -- the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id. at 403-04.

The Supreme Court recently revisited Prima Paint in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006), which clarified that challenges to the validity of arbitration agreements

> can be divided into two types.  One type
> challenges specifically the validity of the
> agreement to arbitrate.  The other challenges
> the contract as a whole, either on a ground
> that directly affects the entire agreement
> (e.g., the agreement was fraudulently
> induced), or on the ground that the
> illegality of one of the contract's
> provisions renders the whole contract
> invalid.[6]

---

[6] Buckeye Check Cashing also noted that "[t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."  546 U.S. at 444 n.1.  Thus, as Judge DuBois put it,
(continued...)

As the Court explained, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  Id. at 445-46.

Plaintiffs' response to defendants' motion to compel arbitration leaves some doubt as to whether plaintiffs challenge the arbitration clause of the agreement or the agreement itself. Plaintiffs aver that: (1) "[t]he contract which forms the basis for the Plaintiff's [sic] claims is a 'contract of adhesion,'" Pls.' Resp. at 4; (2) "the Agreement is a contract of adhesion," id. at 5; (3) "the contract itself is invalid," id. at 6; and (4) "the original contract and the provision related to arbitration are unconscionable and are from an unenforceable contract of adhesion."  Id.  These statements suggest that plaintiffs challenge the contract itself as unconscionable and invalid, which would suggest that their challenge falls into the second

---

[6] (...continued)
"after the Supreme Court's Buckeye decision, it appears that there are three categories of challenges to arbitration provisions.  First, if a challenge is specifically to the arbitration provision, it must be decided by a court.  Second, if a challenge is to the contract as a whole, it must go to arbitration.  Third and finally, if a challenge is to a party's signatory power to the contract, it must be decided by a court." Fox Int'l Relations v. Fiserv Secs., Inc., 418 F. Supp. 2d 718, 723-24 (E.D. Pa. 2006).

category <u>Buckeye Check Cashing</u> describes and, accordingly, an arbitrator should resolve it.

This would be a strange position for plaintiffs to take, given that claims in their amended complaint rest on the enforceability of the contract.  In other portions of plaintiffs' response, they appear instead to target the contract's arbitration clause, asserting that (1) "the Agreement is a contract of adhesion and that the 'arbitration' clause is unenforceable."  <u>Id.</u> at 5.  Plaintiffs' amended complaint, moreover, alleges that "Paragraph 8 (Arbitration) is void, and thus not enforceable."  Pls.' Am. Compl. ¶ 16.  Since we are to give "the pleader the benefit of all reasonable inferences that can be fairly drawn" from the complaint, <u>Ordonez</u>, 289 Fed. Appx. at 554 (internal quotation marks omitted), we will conclude that plaintiffs intend only to challenge the arbitration clause of the agreement as unconscionable, not the agreement itself.

**B.**     **<u>The Arbitration Clause's Alleged Unconscionability</u>**

The Supreme Court noted recently in <u>AT&T Mobility LLC</u>, 131 S. Ct. at 1746 (citations omitted), that 9 U.S.C. § 2

> permits arbitration agreements to be declared
> unenforceable "upon such grounds as exist at
> law or in equity for the revocation of any
> contract."  This saving clause permits

27

agreements to arbitrate to be invalidated by
"generally applicable contract defenses, such
as fraud, duress, or unconscionability," but
not by defenses that apply only to
arbitration or that derive their meaning from
the fact that an agreement to arbitrate is at
issue.

As the Pennsylvania Supreme Court explained in <u>Salley v. Option</u>

<u>One Mortg. Corp.</u>, 925 A.2d 115, 119-20 (Pa. 2007) (citations

omitted), a claim of unconscionability has two elements:

> [A] contract or term is unconscionable, and
> therefore avoidable, where there was a lack
> of meaningful choice in the acceptance of the
> challenged provision and the provision
> unreasonably favors the party asserting it.
> The aspects entailing lack of meaningful
> choice and unreasonableness have been termed
> procedural and substantive unconscionability,
> respectively.  The burden of proof generally
> concerning both elements has been allocated
> to the party challenging the agreement, and
> the ultimate determination of
> unconscionability is for the courts.

<u>See</u> <u>also</u> <u>Bensalem Twp. v. Int'l Surplus Lines Ins. Co.</u>, 38 F.3d

1303, 1312 (3d Cir. 1994) ("Unconscionability requires a two-fold

determination: that the contractual terms are unreasonably

favorable to the drafter and that there is no meaningful choice

on the part of the other party regarding acceptance of the

provisions."); <u>Lucey v. FedEx Ground Package Sys., Inc.</u>, 305 Fed.

Appx. 875, 877 (3d Cir. 2009) ("Under Pennsylvania law, an

arbitration provision is unenforceable on the grounds of

28

unconscionability if two elements are met: (1) the contractual terms are unreasonably favorable to the drafter, and (2) there is no meaningful choice on the part of the other party regarding acceptance of the provisions.  The first element is referred to as substantive unconscionability, while the second is known as procedural unconscionability.") (quotation marks and citations omitted).  But see Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009) ("[Plaintiff's] challenge to the contract is not one of alleged procedural unconscionability, such as whether the type was too small to be legible.  Instead, her claim is one of substantive unconscionability.").

Our Court of Appeals elaborated upon the concept of procedural unconscionability in Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 265 (3d Cir. 2003) (internal citations and quotations marks omitted), explaining that

> Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.  This element is generally satisfied if the agreement constitutes a contract of adhesion.  A contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis.

As for substantive unconscionability, it "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999).

Turning first to the question of substantive unconscionability, our Court of Appeals concluded in Harris that "parties to an arbitration agreement need not equally bind each other with respect to an arbitration agreement if they have provided each other with consideration beyond the promise to arbitrate." Id. at 180. The Pennsylvania Superior Court appeared to take issue with this conclusion in Lytle v. CitiFinancial Servs., Inc., 810 A.2d 643, 665 (Pa. Super. 2002) (emphasis in original), contending that "under Pennsylvania law, the reservation by [a lender] of access to the courts for itself to the exclusion of the consumer creates a presumption of unconscionability, which in the absence of 'business realities' that compel inclusion of such a provision in an arbitration provision, renders the arbitration provision unconscionable and unenforceable." The Pennsylvania Supreme Court rejected this contention in Salley, 925 A.2d at 129, however, holding that "[u]nder Pennsylvania law, the burden of establishing unconscionability lies with the party seeking to invalidate a

contract, including an arbitration agreement, and there is no presumption of unconscionability associated with an arbitration agreement merely on the basis that the agreement reserves judicial remedies associated with foreclosure."

In light of this case law, it seems dubious that plaintiffs have the capacity, as a matter of law, to satisfy the substantive prong of unconscionability with respect to the arbitration clause. Plaintiffs claim that Paragraph 8 of the agreement is unconscionable because it excepts only certain claims by United from its strictures, Pls.' Resp. at 5, and further assert that Section 6(e) of the agreement is unconscionable because it permits only United to seek an injunction in court for violations of the covenants described in Section 6(a)-(d). We note first that Paragraph 8 does <u>not</u> permit United unrestricted access to the courts, but only allows it to pursue in such fora claims "arising out of a breach or threat of breach by Somerset of the Covenants described in Section 6." Ex. 1 to Defs.' Mot. ¶ 8. Perhaps more importantly, the agreement reveals that United provided Somerset with abundant consideration, to wit: fee-based compensation as high as half of the amounts that United derived from customers Somerset procured, and the possibility that Somerset might recoup as much as half of

31

the net proceeds from any sale of United to a third party.  Given

this consideration, we would be hard-pressed to agree that the

arbitration clause -- despite its carve-out of access to the

courts for United -- was substantively unconscionable.

        But we need not reach this question because plaintiffs'

allegations as to procedural unconscionability are, as a matter

of law, inadequate to sustain a challenge to the arbitration

clause.  Plaintiffs' complaint presents three claims in support

of Paragraph 8's procedural unconscionability: (1) the agreement

"was drafted solely and exclusively by the attorney for the

Defendants"; (2) at the time of the agreement's drafting and

signing, "all Plaintiffs were unrepresented by counsel"; and (3)

at the time of the agreement's preparation and execution, "the

Plaintiffs and the Defendants were not of equal bargaining

power."  Pls.' Am. Comp. ¶ 16(a)-(c).  We reject out of hand

plaintiffs' third allegation as the type of "conclusory

statement" to which Iqbal gives no weight.  129 S. Ct. at 1949.

        As for plaintiffs' other two assertions, they would be

insufficient to make out a claim of procedural unconscionability

even if we took them as true.  The mere fact that one party to a

contract drafted it, and the other business involved had no

counsel at the time does not "raise a reasonable expectation that

discovery will reveal," <u>Twombly</u>, 550 U.S. at 556, that the contract was "prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." <u>Alexander</u>, 341 F.3d at 265.  Because plaintiffs have not alleged facts that, if proven, would support Paragraph 8's procedural unconscionability, plaintiffs cannot survive a motion to compel enforcement of Paragraph 8.

> **C.   <u>Availability of Injunctive Relief in Arbitration</u>**

Plaintiffs assert one more basis upon which defendants' motion to compel arbitration should be denied:

> Through industry information, the Plaintiffs have learned the Defendants have entered into an agreement to sell, and may have actually sold its' [<u>sic</u>] business.  Under the terms of the contract the Defendants are <u>required</u> to provide a full accounting as well as divide equally any profit from the sale of the Defendant's [<u>sic</u>] company with the Plaintiffs. . . . The Plaintiffs will be seeking injunctive relief and need the protection of This [<u>sic</u>] Court to preserve the substantial assets involved.  One of the "rumors" understood by the Plaintiffs is that the Defendants are transferring stock as a profit instead of cash and the equitable remedy sought by the Plaintiffs may be all the Plaintiffs might have to protect their interests.  Mediation is unable to provide injunctive relief.

Pls.' Resp. at 3 (emphasis in original).

Plaintiffs' argument appears to rest on a mistaken premise.  Paragraph 8 of the agreement specifies that any "arbitration shall be administered by JAMS either pursuant to its Comprehensive Arbitration Rules and Procedures or Streamlined Arbitration Rules and Procedures," and Rule 24(e) of the JAMS Comprehensive Arbitration Rules provides that "[t]he Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim Award, and the Arbitrator may require security for the costs of such measures."  JAMS Comprehensive Arb. R. & P. 24(e), <u>available at</u> http://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_rules-2010.pdf (last visited Nov. 14, 2011).

Under similar circumstances other courts have rejected challenges to motions to compel arbitration premised on the unavailability of injunctive relief in the arbitral forum.  <u>See</u>, <u>e.g.</u>, <u>HCI Technologies, Inc. v. Avaya, Inc.</u>, 241 Fed. Appx. 115, 125 n.12 (4th Cir. 2007) ("We have previously noted that '[a]rbitrators enjoy broad equitable powers' and 'may grant whatever remedy is necessary to right the wrongs within their

jurisdiction.'"); <u>Bank of Hemet v. Open Solutions, Inc.</u>, 2011 WL 486572, at *3 (C.D. Cal. 2011) ("[T]he Court finds the parties have agreed that arbitration is appropriate for resolving disputes in this matter, including disputes over injunctive relief."); <u>Miller v. Equifirst Corp. of WV</u>, 2006 WL 2571634, at *16 (S.D.W. Va. 2006) ("Plaintiffs provide no support for their assertion that declaratory and injunctive relief are unavailable to them were this matter to proceed to arbitration.  In fact, it appears that the opposite is true.").  We will follow these courts in rebuffing plaintiffs' suggestion that their pursuit of injunctive relief warrants non-enforcement of Paragraph 8.

D.     **Staying or Dismissing this Action**

Having concluded that defendants' motion to compel arbitration should be granted, we are left with the question of how to dispose of plaintiffs' underlying claims.  Our Court of Appeals has noted that "the plain language of [FAA] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."  <u>Lloyd v. HOVENSA, LLC</u>, 369 F.3d 263, 269 (3d Cir. 2004).  But here, neither plaintiffs nor defendants have requested that we stay the

action pending arbitration.  We will accordingly dismiss

plaintiffs' amended complaint and close this case.


BY THE COURT:



__\s\Stewart Dalzell